Land Title and Trust Company to the use of Martin M. Pearlman, Trading as Flanders Realty Company, *v.* J. H. Kabakjian and H. H. Kabakjian, Trading as the Primo Dye Works, Appellants.

*Landlord and tenant—Lease—Subletting—Failure of subtenant to comply with conditions—Refusal to lease—Liability of tenant.*

In an action of assumpsit for rent due under a lease, it appeared that the tenant had notified the landlord of his desire to vacate and had secured permission to sublet the storeroom for the purpose of selling fancy fruits only. On the attempt of the subtenant to install a soda water fountain, the landlord refused to execute the lease and the subtenant did not take possession.

In an action to recover the rent from the original tenant, the court properly found that there had been no termination of the tenancy, and that the landlord could recover under the original lease.

Argued December 10, 1924. Appeal, No. 306, Oct. T., 1924, by defendants, from judgment of Municipal Court of Philadelphia, Feb. T., 1924, No. 125, in favor of plaintiff in the case of The Land Title and Trust Company, to the use of Martin M. Pearlman, trading as Flanders Realty Company, v. J. H. Kabakjian and H. H. Kabakjian, trading as the Primo Dye Works. Before PORTER,

HENDERSON, TREXLER, LINN and GAWTHROP, JJ. Affirmed.

Assumpsit for rent. Before LEWIS, J., without a jury.

The facts are stated in the opinion of the Superior Court.

The court found in favor of the plaintiff in the sum of $274.17 and entered judgment thereon. Defendants appealed.

*Error assigned* was the decree of the court.

*Frederick J. Shoyer,* and with him *Joseph L. Wase,* for appellants.—The action of the landlord amounted to a constructive eviction: Roberts v. Cervone, 82 Pa. Superior Ct. 229, 232; Hoeveler v. Fleming, 91 Pa. 322; Wrable v. Nagelburg & Feigenbaum, 21 D. R. 683; Doran v. Chase, 2 W. N. C. 609; McClurg v. Price, 59 Pa. 420.

*Bertram K. Wolfe,* and with him *Aarons, Weinstein & Goldman,* for appellee.

OPINION BY TREXLER, J., February 27, 1925:

The Land Title and Trust Company leased to the Primo Dye Works, a partnership, a space of approximately 8 x 16 feet in the Flanders Building for a period of three years under a written lease containing a provision against sub-letting. The lease was to run from the 1st of October, 1920, to October, 1923, and under its provisions was extended to October 1, 1924. The Primo Dye Works vacated the premises giving notice to the landlord by letter October 3, 1923, that the premises might be re-rented admitting that they were liable for the balance of the term unless a suitable tenant were found. By writing on October 15, 1923, from the Flanders Realty Company who had become the owners of the lease the defendants were informed that they were authorized to sub-let the space and that the Realty Com-

pany had found a Mr. Kalish who was willing to take the vacant space and they were authorized to sub-let to him, the premises to be used for the selling of fancy fruits only, the re-renting to be on account of the Primo Dye Works. Subsequently in carrying out the suggestion a lease was signed by Kalish and the Primo Dye Works. It was to be approved by the landlord, at least, that was Mr. Kalish's version of the affair. When he came to the landlord to pay the rent and to 'get his copy of the lease he was met with the declaration on the part of the superintendent of the building, "I ain't going to let you put that in." It seems that the tenant had entered and had started the erection of shelving and had made other alterations with the avowed purpose of putting in a soda fountain and of selling candy. When he was met by the refusal of the superintendent to use his language, "I stopped off everything." That ended the transaction as far as he was concerned. The appellants claim that this was an eviction on the part of the landlord which released them from any further payment of rent. The lower court did not share this view.

We do not find that there was any giving up of possession by the landlord to Kalish; no recognition of tenancy. It is very evident that the parties contemplated a written lease, for one had been prepared and until that lease was signed the relation between landlord and tenant did not exist nor did the landlord recognize Kalish as a tenant. The landlord certainly had the right to refuse Kalish the possession of the space when he avowed that he would not use it for the purpose for which the landlord had expressly limited it. We do not think the question of eviction arises in the case at all. In any view of the case we think the landlord was within his rights. Even had he leased these premises to Kalish the fact remains that under the written arrangement of the parties that leasing was to be on account of the Primo Dye Works. If the tenant did not pay his rent the Primo Dye Works were to continue responsible

and if the tenant had violated the provisions of the lease and the landlord had evicted him in consequence, we do not see how that would be a defense to the payment of the rent by the Primo Dye Works. All through the transaction as we construe the written correspondence between these parties there was no releasing of the Primo Dye Works from the obligation of paying the rent until the end of the term and any rent paid on account of the sub-tenant was to be on account of the Primo Dye Works and in relief of their obligation to pay under the provisions of the original lease.

The judgment is affirmed.